IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00376-FL

| | |
|---|---|
| VIRGINIA M. LAUGHLIN,  )<br>  )<br>Plaintiff/Claimant,  )<br>  )<br>v.  )<br>  )<br>CAROLYN W. COLVIN, Acting  )<br>Commissioner of Social Security,  )<br>  )<br>Defendant.  )  | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, -23] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant filed a response to the Commissioner's motion. [DE-25]. Claimant Virginia Laughlin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 15, 2010, alleging disability beginning April 28, 1992. (R. 4, 31, 160). The claim was denied initially and upon reconsideration. (R. 31, 39). A hearing before the Administrative Law Judge

("ALJ") was held on September 6, 2012, at which Claimant was represented by counsel and appeared and testified. (R. 21-30). On September 13, 2012, the ALJ issued a fully favorable decision, granting Claimant's request for benefits. (R. 11-20). On April 12, 2013, the Appeals Council issued an unfavorable decision, reversing the decision of the ALJ. (R. 1-7). Claimant then filed a complaint in this court, seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). Where the Appeals Council reverses the decision of the ALJ, "the

courts in judicial review must uphold the Appeals Council decision if it is supported by substantial evidence." *Lovejoy v. Heckler*, 790 F.2d 1114, 1116 (4th Cir. 1986). "[I]t is the Secretary's final decision rather than that of any initial decisionmaker that should be the direct object of judicial review." *Kellough v. Heckler*, 785 F.2d 1147, 1151 (4th Cir. 1986).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the Appeals Council erred by finding that Claimant was not legally blind, i.e., that Claimant's retinitis pigmentosa did not meet the blindness requirements of Listing 2.03A, as of Claimant's date last insured ("DLI") of December 31, 2005. Pl.'s Mem. [DE-22] at 5.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "disabled" as defined in the Act. (R. 17-20). The ALJ first found Claimant's DLI was December 31, 2005. (R. 17). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. *Id.* Next, the ALJ determined Claimant had the following severe impairments: Usher's Syndrome, depression, fibromyalgia, and retinitis pigmentosa. *Id.* At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] except that Claimant "is unable to perform sustained work on a regular and continuing basis, i.e. 8 hours per day, for 5 days per week . . . ." *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations generally credible. (R. 18). At step four, the ALJ concluded that Claimant could not perform the requirements of her past relevant work. (R. 19). At step five, upon considering Claimant's age, education, work experience

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

and RFC, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Claimant is capable of performing. *Id.* Accordingly, the ALJ determined Claimant has been disabled since the amended onset date, April 28, 1992. (R. 20).

## B. Appeals Council's Findings

The Appeals Council reopened the ALJ's decision and reversed the disability finding. (R. 4). Recognizing that there are different rules for establishing insured status for blind individuals, the Appeals Council determined that the ALJ used the DLI for a blind individual, December 31, 2005, but did not find that Claimant was statutorily blind. (R. 5). The Appeals Council found that Claimant met the criteria for statutory blindness as of December 17, 2008, which was after the DLI for a blind individual. *Id.* The Appeals Council further determined that Claimant's date last insured for a period of disability and DIB was December 31, 1991, but that Claimant's alleged onset date was April 28, 1992. *Id.* Thus, the Appeals Council determined that Claimant was not entitled to benefits under either regulatory scheme. (R. 6).

## C. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 61 years old and for the past three years had been working approximately 2 days a month teaching other visually-impaired and blind people independent living skills. (R. 26). Claimant has an undergraduate degree in special education for the severely emotionally disturbed and worked as a teacher from 1982 until 1986. (R. 26-27). Claimant has Usher's Syndrome, which consists of retinitis pigmentosa with hearing loss, fibromyalgia, ankylosing spondylitis, and clinical depression. (R. 27). Claimant began having visual problems in her mid-teens and was diagnosed with retinitis pigmentosa at 26 years of age. *Id.* She explained that retinitis pigmentosa, for which there is no treatment, begins with loss of night vision

5

and continually progresses. (R. 27-28). Claimant received social security disability due to blindness from 1979 until 1982 when she began teaching. (R. 27). However, her vision continued to decline and she was unable to continue teaching after 1986. (R. 27-28). Claimant has experienced no improvement in her condition, wears sunglasses both inside and outside due to extreme light sensitivity, and has less than five degrees central vision, which she described as a "sliver of vision" the size of a dime. (R. 28).

## V. DISCUSSION

Claimant contends the Appeals Council erred by finding that her retinitis pigmentosa did not meet the blindness requirements of Listing 2.03A before her DLI of December 31, 2005. Pl.'s Mem. at 5-7. The Commissioner counters that there is no clear evidence that Claimant was statutorily blind prior to 2005. Def.'s Mem. [DE-24] at 7-11. The undersigned agrees with Claimant that the Appeals Council did not properly address the onset date of Claimant's blindness, and the case requires remand.

Disability by statutory blindness can be established by demonstrating deficiencies in visual acuity or visual field:

> [T]he term "disability" means . . . blindness; and the term "blindness" means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposes of this paragraph as having a central visual acuity of 20/200 or less.

42 U.S.C. § 416(i)(1). These standards are also reflected in Listing 2.02 and 2.03A. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.00A(2)(c) ("You have statutory blindness only if your visual disorder meets the criteria of 2.02 or 2.03A."). The parties agree that Claimant's visual acuity fails to meet

6

the criteria for statutory blindness, but that Claimant now meets the visual field criteria, where Claimant has only 5 degrees of visual field and the standard for statutory blindness requires no greater than 20 degrees. *Id.* § 2.03A; 42 U.S.C. § 416(i)(1). Thus, the determinative question is whether Claimant became statutorily blind due to her limited visual field prior to her DLI of December 31, 2005.

In the Appeals Council's decision, it "observes that on December 17, 2008, the claimant meets the criteria for statutory blindness." (R. 5). The Appeals Council cited in support of its conclusion Exhibit 7F, which is an August 13, 2012 letter from Dr. Eric Postel of Duke Eye Center. (R. 280). Dr. Postel states that he evaluated Claimant on December 17, 2008, and that at that time she "demonstrated severe visual field loss with less than 5 degrees of visual field in both eyes." *Id.* Claimant testified, and both the ALJ and Appeals Council recognized, that retinitis pigmentosa is a progressive disorder. (R. 5, 18, 27). Therefore, given the progressive nature of Claimant's condition, it stands to reason that if on December 17, 2008, Claimant's visual field was only 5 degrees–15 degrees *more limited* than required by the statute–then Claimant met the lesser 20 degree limitation required to establish statutory blindness at some point prior to that date. However, it is not apparent from the Appeals Council's decision whether it attempted to ascertain the date on which Claimant first met the statutory blindness requirement, and the Appeals Council was not entitled to arbitrarily rely on the December 17, 2008 date given the progressive nature of Claimant's condition. *See Gray v. Apfel*, 191 F.3d 447, 1999 WL 710362, at *2 (4th Cir. 1999) (finding the ALJ erred in failing to infer an onset date and "choosing instead the 'first recorded medical examination'–the March 6, 1995, pulmonary function test–that authoritatively proved it.").

Moreover, SSR 83-20 and Fourth Circuit case law further elucidate the Appeals Council's

7

error in failing to make the proper inquiry necessary to establish Claimant's onset date. "'SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date she applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured.'" *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 (4th Cir. 2012) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008)).

> *In addition to determining that an individual is disabled,* the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.
>
> \* \* \*
>
> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.
>
> \* \* \*
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. . . .

*Id.* at 344 (quoting SSR 83-20, 1983 WL 31249, at *1-3 (emphasis added)). The Fourth Circuit applied SSR 83-20 in the *Bird* case, which is particularly instructive here.

In *Bird*, the claimant, a Vietnam War veteran, alleged disabling PTSD as of the date he last worked, which was several years before his DLI. *Id.* at 339. Bird had no medical records prior to his DLI, and his first medical records indicated he had not received treatment for several years. *Id.* However, subsequent records indicated that Bird's PTSD symptoms had persisted since he returned

8

from Vietnam and that he had a long history of problems. *Id.* The ALJ determined that Bird suffered from PTSD before his DLI, but that it was not severe enough to be disabling, based in part on the lack of pre-DLI medical evidence. *Id.* at 340. The Fourth Circuit noted two errors of law in evaluating the evidence, which are not relevant here, and then concluded that, on remand,

> [i]f the ALJ determines that Bird has established a disability resulting from his PTSD, but that the medical evidence of the date of onset of that disability is ambiguous such that a retrospective inference to the period before Bird's DLI would be necessary, the ALJ will be required to obtain the assistance of a medical advisor in order to render an informed determination regarding the date of onset.

*Id.* at 345 (citation omitted). The court explained that "[b]oth SSR No. 83-20 and our decision in *Bailey* discuss the requirement that an ALJ consult a medical advisor after the claimant has proved that his condition is disabling, but when the date of its onset remains ambiguous." *Id.* at 344. In *Bailey v. Chater*, the Fourth Circuit determined that the evidence regarding the onset date was "ambiguous," explaining that

> [a]lthough the ALJ found that numerous ailments conspired to render Bailey permanently unable to work, the date on which the synergy reached disabling severity remains an enigma. In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.

68 F.3d 75, 79 (4th Cir. 1995). The present case is analogous to *Bird* and *Bailey*.

Here, there is evidence in the record of a progressively debilitating condition, acknowledged by both the ALJ and the Appeals Council. (R. 5, 18). The ALJ referenced, but the Appeals Council did not discuss, medical records from 1992 noting Claimant's retinitis pigmentosa caused poor night vision for which Claimant required an aid and medical records from 1998 noting Claimant reported further loss of night and side vision. (R. 18, 210, 217). Yet, admittedly, there are significant gaps in the medical record–to be expected given the limited treatment options for Claimant's incurable

9

condition–making it difficult to ascertain a precise date on which Claimant became statutorily blind. However, in addition to the medical records, Claimant testified that she was diagnosed with retinitis pigmentosa at age 26 and that she received social security disability benefits due to blindness from 1979 to 1982 until she began teaching, but that she was unable to continue teaching after four years due to her deteriorating vision. (R. 27). *See Bird*, 699 F.3d at 345 ("SSR No. 83-20 provides that the claimant's allegations, his work history, and the medical evidence are all relevant factors in determining the date of onset."). The ALJ found Claimant's testimony credible, and the Appeals Council did not take issue with the ALJ's credibility assessment. *See Parker v. Bowen*, 788 F.2d 1512, 1520 (11th Cir. 1986) (holding that "the Appeals Council is not bound by the ALJ's credibility findings, but when it rejects such findings, it should ordinarily do so expressly, articulating the reasons for its conclusion."). Furthermore, the Claimant's initial alleged onset date corresponded with the date on which Claimant stopped working. (R. 5, 27, 152, 157). *See* SSR 83-20 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working."). Thus, the Appeals Council erred in failing to fully consider not only the medical evidence, but Claimant's testimony and work history to determine the appropriate onset date and, to the extent the evidence is ambiguous, to infer the onset date with the aid of a medical advisor as required by SSR 83-20.

Finally, the Commissioner argues that the medical records and test results from 1998 (R. 210-213), which Claimant contends show her visual field was already less then ten degrees at that time, are not acceptable under the regulations and, thus, Claimant failed to carry her burden to prove that she was statutorily blind prior to her DLI. Neither the ALJ nor the Appeals Council addressed this

material and potentially dispositive evidence, and it is not the court's role to do so in the first instance. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). Thus, the Appeals Council's determination that Claimant was not statutorily blind as of her DLI of December 31, 2005, is not in accordance with the law and is not supported by substantial evidence, and the matter should be remanded to the Commissioner for a proper determination, in conformity with SSR 83-20, of Claimant's onset date.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-21] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-23] be DENIED, and the case be remanded to the Commissioner for proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 11th day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

11

Case 5:13-cv-00376-FL   Document 27   Filed 07/11/14   Page 11 of 11